UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE | : NO. |
| v. | : |
| METLIFE, INC. ("MetLife") <br> c/o the Corporation Trust Company <br> Corporation Trust Center <br> 1209 Orange Street <br> Wilmington, DE 19801 <br> Defendants | : <br> : <br> : Jury Trial Demanded <br> : <br> : |

## COMPLAINT

Plaintiff, John Doe (hereafter "Doe")[1], by and through his undersigned counsel, hereby files the following complaint against the defendant in the above-captioned case.

## JURISDICTION AND VENUE

1. Plaintiff is an adult individual who resides in the Eastern District of Pennsylvania.

2. MetLife, Inc. (hereafter "MetLife") is a Delaware corporation.

3. By virtue of the diverse citizenship of the parties, this matter is initiated in this Court on the basis of diversity jurisdiction pursuant to Title 28, U.S. Code, §1332.

4. Because the contract which give rise to these allegations came into being in Philadelphia County, within the Eastern District of Pennsylvania, venue is proper in this Court pursuant to Title 28, U.S. Code §1391.

---

[1] John Doe is a pseudonym for the plaintiff, used to obscure his true identity from the disinterested reader. His identity is well known to this defendant.

## FACTUAL HISTORY

5. Doe is an attorney at law, a member of the Bar of the Supreme Court of Pennsylvania, the Eastern District of Pennsylvania, the Third Circuit Court of Appeals and the Supreme Court of the United States.

6. Beginning in the late 1970's, Doe held assorted positions as: law clerk to a United States District Court Judge; Assistant United States Attorney; First Assistant United States Attorney; partner in a Philadelphia law firm; Partner and Managing Partner in another Philadelphia law firm; and Chairman of that law firm.

7. Until Doe's disability (described hereinafter), his vocation involved the litigation of civil and criminal cases, the management of the litigation of civil and criminal cases, and the management of the law firm.

8. In Doe's position as manager of the law firm, as well as his position of Chairman of the firm, Doe also managed all of the business conducted by the law firm at its assorted locations, including, but not limited to, it's Philadelphia, Pennsylvania office.

9. During the period when Doe served as the managing partner of the law firm, on October 1, 2008, under MetLife policy No. 6539852 AH, Doe entered into a contract of insurance providing disability coverage. That contract of insurance is attached hereto and incorporated herein by referenced as Exhibit "A". Doe and the other shareholders of the firm have paid hundreds of thousands of dollars in premiums to MetLife, and, at all times material, have remained current in the payment of the said premiums.

10. During the spring of 2007, Doe developed a prostate infection, and came under the care of his treating urologist (hereafter "Urologist").

11.     Under the Urologist's orders, Doe took an antibiotic that caused adverse neurological side effects.

12.     As a result of these symptoms, Doe has been hospitalized and/or has been treated on an outpatient basis in connection with his injuries and symptoms.

13.     From the date of his injuries, and despite the crescendo of his symptoms, Doe continued his employment

14.     However, as a result of his worsening symptoms, in May of 2015, Doe sought further evaluation and treatment.

15.     That evaluation and treatment resulted in the discovery of neurological injuries, which injuries and defects correspond to the symptoms which Doe has suffered, including those injuries and symptoms which have disabled him.

16.     As a result of Doe's neurological injury, since on or about June 1, 2015, Doe has discontinued his employment as a litigator, a manager of litigation and transactional matters and client advice for the law firm, as well as the management of the firm's business activities.

17.     On November 9, 2015, Doe filed an application for disability benefits with MetLife. All of the activities related to the evaluation of the application were undertaken by employees and/or agents of defendant MetLife acting in the course and scope of the employment and/or agency relationship of the subject individuals.

18.     On December 10, 2015, Doe met with Field Representative Randy Gullen of MetLife at Doe's home in a meeting which lasted approximately two and one-half hours, at which time Doe answered each and every question asked of him by Mr. Gullen,

and Mr. Gullen advised Doe that the information made available to MetLife would be shared with Unum in their respective considerations of Doe's disability benefits claims.

19. In connection with Doe's applications for benefits to the defendant herein, Doe has provided any and all documentation requested by the defendant.

20. The defendant has acquired any and all available records which they have reasonably requested.

21. The defendant has been in the possession of objective medical evidence of Doe's neurological injury since no later than November 2, 2015.

22. Pursuant to the MetLife policy referenced hereinabove, MetLife has committed itself to pay the benefits due under the policy "after [it] receive[s] written proof of loss,…"

23. To date, Doe has been paid no benefits under MetLife's policy of insurance.

24. The injuries to Doe's brain are totally disabling for an individual involved in Doe's lifetime employment.

25. The defendant has received each and every record it has requested; they have received answers to each and every question which it has reasonably posed; and it has utilized every reasonable policy provision to ensure itself that Doe's claim is bona fide and was required to be paid in a timely fashion pursuant to the policy provisions of the carrier's own policy language.

26. The defendant has shared any and all information received from Doe, or any of his medical care providers, with the Unum agents who have determined to pay Doe benefits, all with the complete consent of Doe.

27. MetLife has determined that Doe was totally disabled, but has questioned permanency, and accordingly, has declined to pay benefits due to Doe.

28. Doe's injury has rendered him "totally" and "permanently" disabled under MetLife's policy definitions.

## COUNT I – BREACH OF CONTRACT

## DOE V. METLIFE

29. The allegations of paragraphs one through twenty-eight are realleged herein as though fully set forth at length.

30. Doe has met all of the contractual obligations which entitle him to disability benefits from defendant MetLife.

31. MetLife has exhausted its reasonable due diligence related to the evaluation of Doe's claim.

32. By reason of the premises aforesaid, MetLife is in breach of its own policy provisions in that it has failed to pay Doe the benefits which are due him under the policy of insurance between MetLife, on the one hand, and Doe, on the other.

WHEREFORE, Doe seeks compensatory damages from MetLife together with interest, counsel fees and costs, and such other damages as this Court deems appropriate. Moreover, Doe seeks the payment of any and all policy benefits from the first day of his entitlement to the maximum of such benefits.

## II. BAD FAITH

## DOE V. METLIFE

33. The allegations of paragraphs one through thirty-two are realleged herein as though fully set forth at length.

34. By reason of the premises aforesaid, defendant MetLife has acted in bad faith toward plaintiff Doe, in that it has completed its reasonable due diligence in connection with Doe's claim for disability and has failed and refused to pay the benefits which are due Doe under the aforementioned policy.

35. By reason of the premises aforesaid, Doe is entitled to be paid any and all benefits which are due to him under the policy of insurance in connection with his total, permanent disability, together with interest at the prime rate plus 3%.

36. By reason of the premises aforesaid, Doe is entitled to punitive damages against MetLife in connection with its bad faith toward Doe.

37. By reason of the premises aforesaid, Doe is entitled to his court costs and attorney's fees related to his claim against MetLife.

38. By reason of the premises aforesaid, MetLife has engaged in an outrageous, frivolous and unfounded refusal to pay, a lack of the consideration of the facts it has developed and a failure to communicate its reasoning to the insured.

WHEREFORE, Doe prays judgment against MetLife in connection with the bad faith of MetLife toward Doe, and Doe seeks damages in the amount of the entirety of his claim in connection with his permanent, total disability, together with interest in an amount equal to the prime rate of interest plus 3%; the award of punitive damages against MetLife; and the assessment of courts costs and attorney's fees against MetLife.

## V. FRAUD

### DOE V. METLIFE

39. The allegations of paragraphs one through thirty-eight are realleged herein as though fully set forth at length.

40. By reason of the premises aforesaid, defendant MetLife has failed and/or refused to pay Doe the benefits which he is due, and in refusing to pay such benefits, MetLife has falsely represented that it would give due consideration to the circumstances of Doe's disability; that Doe relied upon such representations by providing his personal and medical history for MetLife's consideration; that in reliance upon such representations, Doe fully cooperated with the MetLife claims investigation; when, in truth and in fact, MetLife had no intention of granting Doe benefits on the basis of the available evidence, but instead, determined that it would deny the Doe claim without any basis in fact or law.

WHEREFORE, Doe prays compensatory and punitive damages together with interests, legal costs and attorney's fees.

Respectfully submitted,

JOSEPH M. FIORAVANTI, ESQUIRE
217 North Monroe Street
Media, PA 19063

And

EUGENE J. MALADY, ESQUIRE
211 N. Olive Street, Suite 1
Media, PA 19063

Counsel for Plaintiff